Michael F. Pezzulli
Texas Bar No. 15881900
Michael@courtroom.com
Pezzulli Barnes, LLP
17300 Preston Road, Suite ˜20
Dallas, Texas 75252
972.713.1300
972.713.1333 fax
Counsel for Defendant,
George D. Ringer

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **GEORGE D. RINGER AND** | § | |
| **MARY C. RINGER** | § | |
| | § | **CASE NO. 10-38013** |
| Debtors. | § | **(CHAPTER 7)** |

| | | |
|---|---|---|
| **SOLAR SOCCER CLUB,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | **ADV. NO. 11-3072** |
| **GEORGE D. RINGER** | § | |
| | § | |
| | § | |
| Defendant. | § | |

### DEFENDANT'S ANSWER TO PLAINTIFF'S ORIGINAL COMPLAINT OBJECTING TO DISCHARGEABILITY OF DEBT UNDER 11 U.S.C. § 523 AND OBJECTION TO DISCHARGE UNDER 11 U.S.C. § 727 AS TO <u>DEBTOR GEORGE D. RINGER</u>

Defendant George D. Ringer would show the Court as follows:

### I.    Responses to the Club's Allegations

1.      Ringer admits paragraph 1's allegations.

<u>DEFENDANT'S ANSWER TO PLAINTIFF'S ORIGINAL COMPLAINT</u>                    PAGE 1

2.      Ringer admits the allegation in the first sentence of paragraph 2.     Michael Pezzulli, Pezzulli Barnes, LLP, represents Ringer in this adversary proceeding.

3.      Admitted.

4.      Admitted.

5.      Ringer admits paragraph 5's allegations.   Ringer's Schedule F identifies Solar Soccer Club as an unsecured creditor because of the Club's pre-lawsuit claims for reimbursement of monies, which the Club paid for services.   These are the same claims, which the Club asserts here.   Ringer disputes these claims and contends that the Club properly paid for services received. Ringer owes no debt to the Club.

6.      Admitted.

7.      Admitted.

8.      Ringer denies the header in paragraph B in all respects.   Also, paragraph 8 misstates or mischaracterizes key facts and omits others.   Ringer served as Solar Soccer Club's President between 1996 and May 2003.   When Ringer became the president, the Club sponsored 10 teams.   By 2003, the Club sponsored approximately 55 teams in the 10-to-18 age groups and an additional approximately 25 teams in age groups at 9 and under.   In 2003, Ringer assumed the role of past-President and Chairman of the Board, together with other offices.   Mark Scholten served as the Club's CEO and President between 2003 and 2010.   Upon information and belief, Mark Scholten remains the Club's President to this date.   Between 2003 and 2010, Scholten made or participated in executive decisions, which required the President's or Board's approval. President Scholten made or participated in all types of decisions, including the decision to use G. David Ringer, P.C.'s services, decisions in the Club's litigation, the decision to cause the Club to borrow money to address its operating obligations, decisions to set the amounts and charges for

membership dues and other costs and expenses, and decisions in the examination, negotiation, and

contracting for a new training facility.   Also, players who joined Club-sponsored teams paid their

teams between $2,200 and $3,500 per year.   The teams, in turn, paid a portion of these amounts to

the Club for dues, coaching fees, maintenance fees and other disbursements.   Club-sponsored

teams also paid league fees, tournament-entry fees, and other costs.   In 1995—the year before

Ringer became President—the Club received and disbursed less than $30,000.   In the 2009–2010

fiscal year, the Club received and disbursed over $1,869,000, with $1,560,000 of it received or

disbursed during the seven-plus months Ringer was affiliated with the Club that fiscal year.

Ringer denies all contrary allegations in paragraph 8.

9.        Ringer denies paragraph 9's allegations.   Article 5 of the Club's Articles of

Incorporation expressly allows the Club to reimburse for reasonable expenses to directors or to

officers for services rendered.   Ringer announced his decision to retire and to continue only in the

role as past-President in May 2003.   The Director of Coaching, the then-Vice President, and other

club members asked Ringer to continue to provide management and operational support.   Ringer

agreed on the condition and understanding that the Club would compensate or reimburse his law

firm for management or legal services, which were beyond the scope of ordinary matters.

President Scholten, Ringer, and others discussed and reviewed G. David Ringer, P.C.'s

relationship with the Club on a regular basis, including in setting annual dues, in reviewing

operations for the past year, and in making litigation decisions.   Moreover, President Scholten,

Ringer, and others discussed all of the Club's transactions, including the financial arrangements

between the Club and G. David Ringer, P.C., each year when the Club filed tax returns with the

IRS, and when the Club applied to banks and other outside parties for loans.

      a.      In April 2004, the Prince of Peace Lutheran Church & School sued the Club to eliminate the Club's most significant asset, its training facility. President Mark Scholten and Ringer discussed the litigation. The Club engaged G. David Ringer, P.C. and agreed to pay all the costs and expenses associated with replacing the training facility. This agreement continued through the trial and appeal. The Club also hired and paid outside counsel for additional assistance during trial and on appeal. Through trial and the appeal, G. David Ringer, P.C. provided legal services to the Club, and the Club paid on account for these services periodically.

      b.      G. David Ringer, P.C. also provided the Club with legal services in connection with claims against a defalcating team manager, and the Club paid the law firm's legal fees. Again, President Scholten actively participated in the matter and was aware of the law firm's role and the fact that the Club was paying the firm for legal services. President Scholten even discussed the fees with Ringer when the parties settled the claims and the Club obtained an agreed judgment against the team manager.

Ringer denies all contrary allegations in paragraph 9.

      10.     Ringer denies paragraph 10's allegations. In performing his responsibilities, Ringer had his firm keep complete, accurate, and consistent books, reports, or records of the Club's operations and the services provided to it. These books and records were generally available to President Scholten and the Club's Board and officers. The Club's records include records on the services, which G. David Ringer, P.C. provided the Club. As examples, disclosures of the Club's operations and financial affairs, including payments made to G. David Ringer, P.C., were embodied within the Club's books and records; the Club's Form 990 (a return

for an organization exempt from income tax[1]), which it filed annually; and reports to banks, individual lenders, and other parties.    Also, G. David Ringer, P.C. kept time records for all legal services and provided statements on some matters at the time.    The Club paid only for services actually rendered; the Club paid on preferential terms within, for example, the meaning of article 6 of the Club's Articles of Incorporation; and the Club's payments on account never exceeded the value of the services provided to date.    Also, G. David Ringer, P.C. has provided the Club with records for all services.    The Club has, or had (if it has lost or destroyed them), statements for such services, including the law firm's services in pursuing the Club's claims against the defalcating team manager discussed in paragraph 9(b).    Also, the Club generated annual profit & loss statements and filed annual tax returns, which discussed the Club's financial matters, including its payments to affiliated parties, like G. David Ringer, P.C.    President Scholten and others in the Club's community had access to these statements and tax returns.    Moreover, President Scholten participated in annual discussions about the Club's budget, and these discussions covered things such as management fees, legal fees, and other operational costs.    President Sholten also participated in the Club's business decisions, such as decisions about annual dues and fees, income needs, operating-cash shortfalls, and means for dealing with shortfalls, which further covered the Club's financial affairs, including payments to G. David Ringer, P.C.    President Scholten also executed loan documents as the Club's President or other officer, and the discussions leading to such borrowings also covered these matters.    In short, President Scholten and the Club had actual and constructive knowledge of these matters.

---

1 http://www.irs.gov/pub/irs-pdf/f990.pdf .

DEFENDANT'S ANSWER TO PLAINTIFF'S ORIGINAL COMPLAINT                    PAGE 5

11.    Ringer denies paragraph 11's allegations.    President Scholten, another of the Club's officers, and the Club itself had actual or constructive knowledge of the Club's financial affairs, cash shortfalls, and its borrowings, including those from "various third-parties outside Solar."    In fact, President Scholten and the other officer knew about or benefitted from roughly 75 percent of the Club's borrowings over six years.    The Club's cash shortfalls first started in the Spring of 2005.    President Scholten, as an individual or as the general partner in one of his family's limited partnerships, made over $475,000 in various loans to the Club between May 2006 and July 2009.    In February 2010, the outstanding principal balance of these notes was approximately $55,651.33.    In May 2008, President Scholten signed, as the President, a promissory note to an outside party.    President Scholten received a copy of all loan documentation, including a current profit & loss statement.    Lastly, Ringer admits that G. David Ringer, P.C. loaned the Club $22,700 in several transactions by the end of the fiscal year ending June 30, 2010.    And the Club's deposit records and ledger evidence these loans and the Club's repayment of them without interest.

12.    Ringer admits the allegation in the first sentence of paragraph 12.    Because the second sentence's allegations are incomplete and inaccurately or incompletely characterize the situation, Ringer denies the second sentence's allegations.    Ringer admits that the parties' privileged and confidential discussions did not lead to a settlement.    Ringer admits the last sentence's allegation.

## II.    Responses to the Club's Claims

13.    Ringer denies paragraph 13's allegations.    He repeats and re-alleges his responses and allegations in paragraphs 1–12, above.

14.    Ringer denies paragraph 14's allegations.    He repeats and re-alleges his responses and allegations in paragraphs 1–13, above.    Also, waiver, ratification, estoppel, and quasi-estoppel bar the Club from complaining about, or basing claims on, transactions that it knew of, agreed to, approved, or accepted the benefits of.    Also, in addition to amounts actually paid, G. David Ringer, P.C. has posted approximately $211,912.50 in unpaid time, after applying payments on account.

15.    Ringer denies paragraph 15's allegations.

16.    Ringer denies paragraph 16's allegations.

17.    Ringer denies paragraph 17's allegations.

18.    Ringer denies paragraph 18's allegations.

19.    Ringer denies paragraph 19's allegations.

20.    Ringer denies paragraph 20's allegations.

21.    Ringer denies paragraph 21's allegations.    He repeats and re-alleges his responses and allegations in paragraphs 1–20, above.

22.    Ringer denies paragraph 22's allegations.    The Club maintained its funds and monies in its own accounts and on its own records.    The Club paid for management and legal services provided by G. David Ringer, P.D. by check to the law firm.

23.    Ringer denies paragraph 23's allegations.    He also repeats and re-alleges his response and allegations in paragraph 22, above.

24.    Ringer denies paragraph 24's allegations.

25.    Ringer denies paragraph 25's allegations.    He also repeats and re-alleges his response and allegations in paragraphs 1–24, above.

26.     Ringer admits that he owed the Club certain fiduciary duties when he served as the Club's President between 1996 and May 2003.   Ringer denies that he owed the Club any fiduciary duties as the President when he left this office and became the past-President in May 2003.   He admits that he owed the Club certain duties as the Chairman of the Board between May 2003 and February 10, 2010.   Ringer admits that he owed the Club fiduciary duties as a lawyer, within the scope of the relevant representations, during the times when G. David Ringer, P.C. served as its legal counsel.   In addition, President Scholten owed the Club fiduciary duties as its President between May 2003 and the present, including the duty to fully inform the Club of the matters within his actual and constructive knowledge.   Ringer also repeats and re-alleges his response and allegations in paragraphs 1–25, above.   Ringer denies all contrary allegations in paragraph 26.

27.     Ringer denies paragraph 27's allegations.

28.     Ringer denies paragraph 28's allegations.

29.     Ringer repeats and re-alleges his response and allegations in paragraphs 1–28, above.

30.     Ringer denies paragraph 30's allegations.   The Club knew of and approved all payments to G. David Ringer, P.C., including the payment of fees for legal services and the repayment of loans, which the firm made to the Club.   The Club's books, records, financial statements, or tax returns documented the relevant information.   Moreover, the Club's own books and records contravene the Club's allegations that Ringer caused the Club to pay "in excess of $800,000" to Ringer over five years.   The Club's books show that it paid approximately $413,722 for management fees in seven years and approximately $217,500 in legal fees in the last two years.

31.     Ringer denies paragraph 31's allegations.

32.    Ringer repeats and re-alleges his response and allegations in paragraphs 1–31, above.

33.    Ringer denies paragraph 33's allegations.

34.    Ringer denies paragraph 34's allegations.

35.    Ringer denies paragraph 35's allegations.

36.    Ringer repeats and re-alleges his response and allegations in paragraphs 1–35, above.

37.    Ringer denies paragraph 37's allegations.

38.    Ringer denies paragraph 38's allegations.

39.    Ringer repeats and re-alleges his response and allegations in paragraphs 1–38, above.

40.    Ringer admits that he signed his Statement of Financial Affairs, Summary of Schedules, and Schedules under penalty of perjury.   Ringer denies the rest of paragraph 40's allegations.

41.    Ringer denies paragraph 41's allegations.

42.    Ringer denies paragraph 42's allegations.

43.    Ringer denies paragraph 43's allegations.

44.    Ringer denies paragraph 44's allegations.

45.    Ringer repeats and re-alleges his response and allegations in paragraphs 1–44, above.

46.    Ringer admits that the Schedules to Ringer's bankruptcy reflect his relevant income.   Ringer denies paragraph 46's remaining allegations.

47.    Ringer denies paragraph 47's allegations.

48.    Ringer denies paragraph 48's allegations.   Also, the Club took no steps to explore
or inquire about any matter or basis relating to the economic circumstances, which resulted in
Ringer filing a bankruptcy petition in this Court.

### III.    Response to the Club's Reservation of Right

49.    Ringer repeats and re-alleges his response and allegations in paragraphs 1–48,
above.

50.    Ringer denies paragraph 50's allegations.   Also, the Club did not attend the
creditors' meeting, under 11 U.S.C. § 341, did not provide notice of an examination under
Rule 2004 of the Federal Rules of Bankruptcy Procedure to investigate its allegations, and, upon
information and belief, did not conduct any other discovery under the Federal Rules of Bankruptcy
Procedure or the Federal Rules of Civil Procedure to investigate its allegations.   Ringer denies
that the Club's allegations constitute a reservation of the right to amend the complaint or that the
Club has the unilateral power to reserve this right outside Rule 15 and Rule 7015.

### IV.    Response to the Club's Prayer

51.    Ringer denies the allegations in the Club's prayer and denies that the Club is
entitled to any form of relief.

### V.    Ringer's Affirmative Defenses

52.    Ringer repeats and re-alleges the allegations from paragraphs 1–51, above.

53.    **Waiver, Ratification, Estoppel, and Quasi-Estoppel.**   As discussed, Ringer was
the Club's President between 1996 and May 2003, when he resigned and accepted the office of
past-President.   During his tenure, the Club significantly increased the number of participating
teams and the Club's revenues.   Mark Scholten has served as President since May 2003 and, upon
information and belief, continues in this position to this day.   The Club has always kept accurate

books and records, has maintained bank records, and has prepared annual profit & loss statements and Form 990 tax returns. The Club's cash shortfalls began in the Spring of 2005, and the Club openly borrowed money to finance its operations. President Scholten knew of the Club's business operations, financial affairs, and borrowings. The Club borrowed over $475,000 from President Scholten personally or from one of his family's limited partnerships. By February 2010, the Club had paid these balances down to approximately $55,651.33. And G. David Ringer, P.C. loaned the Club $22,700 by the end of the fiscal year ended June 30, 2010, which the Club repaid without interest. The Club's ledger, notes, correspondence, or bank records evidence all of the Club's loan transactions. In addition, President Scholten was personally involved in the Club hiring G. David Ringer, P.C. as the Club's lawyers and participated in decisions about the Club's business, finances, and litigation, including notable litigation against the Prince of Peace Lutheran Church & School and one of the Club's defalcating team managers. Statements for services, financial records, and bank records recorded information about the law firm's services and the Club's payments for them. In short, President Scholten and the Club had actual or constructive knowledge about the Club's business and financial affairs, borrowings, use of G. David Ringer, P.C., lawsuits and claims, and payments to affiliates. The President and Club not only failed to protest these matters or payments but they approved them and accepted the benefits of these transactions and services. Ringer and G. David Ringer, P.C. relied on the President's and Club's conduct related to these matters by continuing to provide management and legal services to the Club. It would be unjust to permit the Club to retain these benefits and services without compensation. Thus, the doctrines of waiver, ratification, estoppel, and quasi-estoppel bar the Club's claims.

54.    **Article 10 of the Club's Articles of Incorporation.**   Under article 10, Ringer is also not liable to the Club in money damages for acts or omissions, which he took in his capacity as a director.   This article bars a recovery in money damages on the Club's claims here.

## VI.   Claims for Reimbursement or Indemnification

55.    **Sections 8.051–8.052 of the Business Organizations Act.**   Ringer repeats and re-alleges the allegations in paragraphs 1–54, above.   Ringer has incurred, and will continue to incur, expenses as a result of the Club's claims.   And these claims arise because Ringer was a governing person or delegate of the Club as discussed.   Thus, Ringer brings a claim for reimbursement or indemnification under sections 8.051 and 8.052 of the Texas Business Organizations Act (Texas Non-Profit Corporation Act, Tex. Rev. Civ. Stat. art. 1396-2.22A).

56.    **Article 11 of the Club's Articles of Incorporation.**   Ringer repeats and re-alleges the allegations in paragraphs 1–55, above.   Ringer seeks indemnification under article 11.

## VII.   Prayer for Relief

57.    Defendant George David Ringer asks the Court (a) to overrule Plaintiff Solar Soccer Club's objections to the dischargeability of Ringer's debt and (b) to dismiss the Club's claims and original petition with prejudice.   Ringer asks the Court (c) to order reimbursement or indemnification as paragraphs 55 & 56 discuss.   Ringer also asks the Court (d) to award or tax costs and fees against the Club.   He lastly asks for (e) all other relief at law or in equity to which he is justly entitled.

Dated:   March 17, 2011

Respectfully submitted,

*Michael Pezzulli* by permission
CLB
00792175

MICHAEL F. PEZZULLI
State Bar No. 15881900
CHRISTOPHER L. BARNES
State Bar No. 00792175
17300 Preston Road, Suite 220
Dallas, Texas   75252
(972) 713-1300
(972) 713-1333 fax

**ATTORNEYS FOR DEFENDANT
GEORGE DAVID RINGER**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 17, 2011, a true and correct copy of the foregoing pleading was forwarded by first-class mail and fax to Steven J. Badger, Zelle, Hofmann, Voelbel & Mason, LLP, 901 Main Street, Suite 4000, Dallas, Texas 75202-3975, 214.72.3000, 214.760.8994 (fax) as well by first-class mail to the persons listed on the attached service list.

*Michael F. Pezzulli* by permission
CLB
00792175

Michael F. Pezzulli

DEFENDANT'S ANSWER TO PLAINTIFF'S ORIGINAL COMPLAINT                    PAGE 13

Trustee:
Robert Yaquinto Jr.
509 N. Montclair
Dallas, Tx. 75208-5450

Attorney General of Texas
Bankruptcy Division
PO Box 12548
Austin, Tx. 78711-2548

Texas Comptroller of Public
Accounts
Revenue Accounting Div – Bky.
Section
PO Box 13528
Austin, Tx. 78711-3528

Higher Education Student
Assistance Auth
PO Box 548
Trenton, NJ 08625-0548

Internal Revenue Service
Centralized Insolvency
Operations
PO Box 7346
Philadelphia, PA 19101-7346

Round Point Mortgage
PO Box 19409
Charlotte, NC 28219-9404

U.S. Trustees Office
1100 Commerce Street, Room
976
Dallas, Tx. 75242-0996
Discover Card
PO Box 15192
Wilmington,DE 19850-5192

Debtor:
Mary C. Ringer
9522 Moss Haven
Dallas, Tx. 75231-2608

U.S. Bankruptcy Court
1100 Commerce St., Room 1254
Dallas, Tx. 75242-1305

Charles R. Billings
Attorney-at-law
14901 Quorum Dr., Suite 740
Dallas, Tx. 75254-7524

Discovery   Financial   Services
LLC
PO Box 3025
New Albany,OH 43054-3025

Internal Revenue Service
Attn: Vickie Fortson
4050 Alpha Rd., Room 185
MC 5120
Dallas, Tx. 75244-9440

Internal Revenue Service
PO Box 21126
Philadelphia, PA 19114

U.S. Trustee
1100 Commerce St., Room 976
Dallas, Tx. 75242-1011

Debtor's Attorney
Joyce W. Lindauer
Joyce W. Lindauer, Attorney at
Law
8140 Walnut Hill Lane, Suite
301
Dallas, Tx. 75231

Bobby D. Associates
c/o Heather H. Jobe
c/o Bell Nunnally & Martin, LLP
3232 McKinney Ave., Suite
1400
Dallas, Tx. 75204-2429

City of Dallas
1600 Marilla, 2Ds
Dallas, Tx. 75201-9990

Frost National Bank
PO Box 34756
San Antonio, Tx. 78265-4746

Internal Revenue Service
Mail Code DAL-5020
1100 Commerce St.
Dallas, Tx. 75242-1001

Richardson I.S.D.
c/o Perdue, Brandon, Fielder, et
al
PO Box 13430
Arlington, Tx. 76094-0430

US Attorney
Main & Justice Bldg.
10th & Pennsylvania NW
Washington, DC 20530-0001

Comptroller of Public Accounts
Rev Act. Div. – Bankruptcy Sec
PO Box 13528
Austin, Tx. 78711